GREENBERG TRAURIG, LLP
David D. Cleary, AZ SBN 011826
clearyd@gtlaw.com
2375 East Camelback Road, Suite 700
Phoenix, Arizona 85016
Telephone: 602-445-8000
Facsimile: 602-445-8100

*Attorney for Debtors and Debtors-in-Possession*

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br>Prime Time International Company, an Arizona corporation, *et al.*,<br><br>    Debtors and Debtors-in-Possession.<br><br>This filing applies to:<br>☒  All Debtors<br>☐  Specified Debtors | Case No. 2:14-bk-03518 (MCW)<br><br>Chapter 11<br><br>(Jointly Administered)<br><br>**DEBTORS' MOTION TO INCUR POST-PETITION FINANCING PURSUANT TO ASSET PURCHASE AGREEMENT**<br><br>Hearing:<br>Date:    December 11, 2014<br>Time:    2:00 p.m.<br>Courtroom:  230 N. First Avenue<br>              Courtroom 702<br>              Phoenix, Arizona 85003 |

Prime Time International Company, Inc. ("**PTIC**"), USA Tobacco Distributing, Inc. ("**USA Tobacco**"), and 21st Century Brands, LLC ("**Century Brands**") (collectively, "**Prime Time**"), the above-captioned debtors and debtors-in-possession (the "**Debtors**") in these chapter 11 cases, move this Court for an order under 11 U.S.C. §§ 105(a), 361, 362 and 364 and Rule 4001 of the Federal Rules of Bankruptcy Procedures authorizing the Debtors to incur post-petition financing pursuant to the Sale Order ("**Sale Order**") [Docket No. 315] entered on November 13, 2014, and the Asset Purchase Agreement ("**APA**") and DIP Term Sheet ("**Term Sheet**") attached thereto. The Debtors seek to implement the terms of the APA and obtain DIP

financing pursuant to the terms outlined in the Term Sheet attached to the approved APA and use proceeds to (a) pay its existing secure lender and (b) continue their on-going operations and maintain their going concern value (the "**Motion**"). The basis for relief requested in this Motion is set forth below in the Memorandum of Points and Authorities and will be supported by the entire record before the Court, the Declaration of John T. Wertheim in Support of Debtors' Chapter 11 Petitions and Requests for Relief (the "**Wertheim Declaration**"), and the Declaration of Matt Foster in Support of Debtors' Motion For Entry Of Orders: (A)(I) Approving Bid Procedures Relating To Sale Of The Debtors' Assets; (II) Approving Bid Protections; (III) Scheduling A Hearing To Consider The Sale; (IV) Approving The Form And Manner Of Notice Of Sale By Auction; (V) Establishing Procedures For Noticing And Determining Cure Amounts; And (VI) Granting Related Relief; And (B)(I) Approving Asset Purchase Agreement And Authorizing The Sale Of Certain Assets Of Debtors Outside The Ordinary Course Of Business; (II) Authorizing The Sale Of Assets Free And Clear Of All Liens, Claims, Encumbrances And Interests; (III) Authorizing The Assumption, Sale And Assignment Of Certain Executory Contracts And Unexpired Leases; And (II) Granting Related Relief (the "**Foster Declaration**") and the Sale Order.

Dated: November 21, 2014

GREENBERG TRAURIG, LLP

*/s/ David D. Cleary*

David D. Cleary
*Attorney for Debtors
and Debtors-in-Possession*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue in this judicial district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. On March 15, 2014 (the "**Petition Date**"), the Debtors commenced the above-captioned chapter 11 cases (the "**Cases**") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**").

4. The Debtors have continued in possession of their properties and are operating and managing their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. No request has been made for the appointment of a trustee or an examiner and none has been appointed in these cases. No official committee of unsecured creditors has been appointed in these cases.

## II. GENERAL BACKGROUND

### a) Existing Secured Lender

6. Prime Time was incorporated in 1993 under the laws of the State of Arizona for the purpose of manufacturing and distributing a wide variety of cigarettes and little cigars. PTIC has two wholly-owned subsidiaries: USA Tobacco and Century Brands, both debtors. USA Tobacco was incorporated in Arizona in 1993 for the purpose of distributing PTIC's products. Century Brands was organized in Arizona in 2009 for the purpose of marketing and distributing non-tobacco consumer products.

7. In addition to normal course costs of operations, market development and product enhancements, the Debtors have long term debt pursuant to certain loans made to the Debtors by JPMorgan Chase Bank, N.A. ("**Chase**" or the "**Prepetition Lender**"). That debt is comprised of: (i) a loan made by Chase to the Debtors in the original principal amount of $3,500,000 (the "**Facility A Loan**") which is evidenced by, among other things, (x) that certain Credit Agreement by and between PTIC and Chase dated May 13, 2011 (the "**Credit Agreement**") and (y) that certain Promissory Note by PTIC in favor of Chase dated May 13, 2011; (ii) a loan made by

-3-

*PHX 331322748v1*

Chase to the Debtors in the original principal amount of $1,140,912.50 (the "**Facility B Loan**") which is evidenced by, among other things, (x) the Credit Agreement and (y) that certain Promissory Note by PTIC in favor of Chase dated February 2, 2009; (iii) a loan by Chase to the Debtors in the original principal amount of $2,200,000.16 (the "**Facility C Loan**") which is evidenced by, among other things, (x) the Credit Agreement and (y) that certain Promissory Note by PTIC in favor of Chase dated October 7, 2011 and (iv) a loan made by Chase to PTIC in the original principal amount of $100,000 (the "**Equipment Loan**, and together with the Facility A Loan, the Facility B Loan and the Facility C Loan, the "**Loans**") which is evidenced by, among other things, (x) the Credit Agreement and (y) that certain Promissory Note by PTIC in favor of Chase dated November 28, 2011.

8. As of the Petition Date, the Debtors are indebted to the Prepetition Lender in principal amount of not less than $3,503,704 as a result of the Loans (the "**Bank Indebtedness**"). The Bank Indebtedness is secured by, among other things, a valid, perfected, first and prior lien on (A) all or substantially all of the personal property owned by the Debtors including (without limitation) all of the Debtors' respective inventory, chattel paper, accounts, equipment, and general intangibles pursuant to (i) that certain Continuing Security Agreement by PTIC in favor of Chase dated January 25, 2005; (ii) that certain Continuing Security Agreement by PTIC in favor of Chase dated April 24, 2012 and (B) that certain real property and improvements located in Wilson County, North Carolina more particularly described in that certain Deed of Trust executed by PTIC, as trustor, for the benefit of Chase, as beneficiary, dated May 10, 2007 (collectively, the "**Prepetition Collateral**"). The Bank Indebtedness is also unconditionally guaranteed by Century Brands pursuant to that certain Continuing Guaranty Agreement dated June 14, 2010, and executed by Century Brands in favor of Chase.

9. A more detailed factual background of the Debtors' business and operations, as well as the events precipitating the commencement of these Cases, is fully set forth in the

-4-

*PHX 331322748v1*

*Declaration of John T. Wertheim in Support of the Debtors' Chapter 11 Petitions and Requests for Relief* (the **"Wertheim Declaration"**) and incorporated herein by reference.

### b) Sale Process and Approved Sale Terms

10. Beginning in March, 2014, the Debtors embarked on a comprehensive restructuring effort, including exploring various strategic alternatives, such as a transaction involving a sale of all of the Debtors' assets or equity investment in the Debtors. The Debtors, together with their advisors, in connection with these restructuring efforts, initiated a sale process, which included actively marketing their assets in an effort to maximize value for all of their constituents. This marketing process included contacting various financial and strategic parties that the Debtors and their advisors believed may have an interest in potentially purchasing some or all of the Debtors' assets or equity (the **"Assets"**) and discussing such possibilities with them. Beginning in June 2014, the Debtors or their advisors: (i) contacted one hundred forty-six (146) potential purchasers or investors and provided interested parties with a request to participate in the process (a **"Teaser"**), (ii) received preliminary indications of interest from forty-eight (48) parties, and (iii) entered into confidentiality agreements (each, a **"Confidentiality Agreement"**) with thirty-five (35) parties. These parties were then provided with a confidential information memorandum as well as access to a data room that allowed the interested parties to conduct initial due diligence and determine whether they would like to continue to participate in the process. Of those thirty-five (35) parties, seven (7) expressed continued interest in purchasing the Debtors' Assets and submitted a letter of intent (**"LOI"**). Based on the LOIs submitted, the Debtors invited the interested parties to continue their participation in the process. The interested parties were then invited to conduct management interviews at the Phoenix headquarters, tour the manufacturing facility in North Carolina, and complete due diligence. The Debtors completed the solicitation process and requested offers to be submitted on or around September 2, 2014. After

receiving the offers, the Debtors evaluated and negotiated terms of the offers, attempting to achieve the best terms and conditions for the estate.

11. At the end of that process, the Debtors and Prime Time International Acquisition LLC (the **"Stalking Horse"**) engaged in extensive negotiations around a transaction whereby the Stalking Horse would acquire the Debtors' assets subject to higher and/or better bids. The negotiations resulted in a proposed Stalking Horse bid. On October 20, 2014 (the "**Bid Procedure Hearing**"), the Court approved the Stalking Horse bid protections and set dates for an auction and sale hearing to be held and conducted on November 10, 2014 [Docket No. 295].

12. Subsequent to the Bid Procedure hearing, the Debtors continued to market their Assets and qualify bidders for an auction. The Debtors qualified two bidders, the Stalking Horse and one competing bidder. Each bid contained a component to provide DIP financing to the Debtors by December 15, 2014 pursuant to identical term sheets attached to their submitted bids (the **"DIP Financing"**). The Sale Order approved the APA submitted by the Stalking Horse (the "**Buyer**"), including the terms of the proposed DIP Financing [Docket No. 315].

### III. BASIS FOR RELIEF

13. By this Motion, the Debtors seek authorization to incur the DIP Financing subject to the terms set forth in the term sheet attached to the APA and as Exhibit A to this Motion. In consideration for the DIP Financing, the Debtors seek authority from the Court to provide the Buyer with liens equivalent to the liens held by Pre-Petition Lender.

14. The Debtors propose to use the DIP Financing immediately following the Court's entry of an order to pay the existing Pre-Petition Lender the balance due on its facility and for general and administrative expenses related to the Debtors' operation of their businesses in the ordinary course and the administration of their bankruptcy estates, the vast majority of which shall be used to preserve and maintain the value of the Debtors' operations subject to the terms

and conditions detailed in the Proposed Order, to be filed with the Court (the "**Proposed Order**").

15. The proposed DIP Financing terms are attached to the Sale Order and include:

| | |
|---|---|
| **Borrowers:** | Prime Time International Company, 21st Century Brands, LLC, and USA Tobacco Distributing, Inc., in their capacity as debtors and debtors-in-possession in cases filed under Chapter 11 of the United States Bankruptcy Code (collectively, the "Borrowers"). |
| **Lender:** | Prime Time International Acquisition, LLC or its designee (the "Lender"). |
| **Venue:** | United States Bankruptcy Court for the District of Arizona |
| **Credit Line:** | Up to $3,600,000.00 (the "DIP Facility"). |
| **Use of Proceeds:** | Under the DIP Facility, the Borrowers shall incur advances and use the proceeds thereof solely as follows: (a) upon entry of a final order approving the DIP Facility, repay in full the Borrower's outstanding indebtedness to J.P. Morgan Chase in the approximate amount of **$3,350,000.00**; and (b) $400,000.00, which shall be used first to pay amounts outstanding and payable to USDA. |
| **Security:** | The DIP Facility will be entitled to superpriority administrative expense claim status and will be secured by a first priority perfected security interest in the equity of each of the Borrowers and in all of Borrowers' assets, including all real and personal property, whether now owned or hereafter acquired, and, subject to entry of a Final Order, any avoidance actions of the Borrowers under Sections 544, 545, 547 through 551 and 553(b) of the Bankruptcy Code. |
| **Termination Date:** | The earliest to occur of: (a) the sale of assets in the Borrowers' Chapter 11 cases; or (b) June 15, 2015. |
| **Interest Rates:** | 11.0%. |
| **Performance Covenant:** | Borrowers shall: (a) maintain a collateral amount in terms of eligible accounts receivable and inventory in excess of the amount borrowed at all times. Eligible accounts receivable is defined as all trade receivables of Prime Time International Company, USA Tobacco Distributing, Inc. and 21st Century Brands, LLC less any amounts over 90 days past due. Eligible inventory is defined as all inventory less parts, packaging and any finished goods inventory over 18 months old. The advance rate against eligible accounts receivables and inventory is 75%; and (b) report and certify the collateral position of the borrowers in accordance with (a) above by the 15th of each month. |

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

| | | |
|---|---|---|
| **Events of Default:** | | Any one or more of the following events shall constitute an event of default: (a) if the Borrowers fail to pay when due and payable, or when declared due and payable, all or any portion of the obligations consisting of principal, or interest due the Lender under the DIP Facility; (b) if the Borrower fails to comply with the Performance Covenants. |
| **Remedies:** | | After June 15, 2015, if the sale transaction contemplated by the Purchase Agreement has not closed and the parties have not agreed to extend the termination date, upon the occurrence of an Event of Default and following the giving of five business days' notice to the Borrowers, the Agent shall have relief from the automatic stay and may foreclose on all or any portion of the security for the DIP Facility and apply the proceeds thereof to the obligations arising under the DIP Facility and otherwise exercise remedies against the security for the DIP Facility permitted by applicable non-bankruptcy law. |
| **Governing Law:** | | State of Arizona |

16. The terms proposed by are within the range of market terms for other debtor-in-possession loans in other bankruptcy cases and are part of the consideration provided by the Purchaser pursuant to the APA approved on November 13, 2014 [Docket No. 315]. As part of the Debtors' market solicitation, Debtors were not able to obtain replacement financing on an unsecured basis and negotiated the terms of the proposed DIP Financing, which are more favorable than the terms of the current pre-petition secured debt.

17. The Bankruptcy Code authorizes a debtor-in-possession to obtain financing postpetition pursuant to § 364. Section 364 permits the Court, after notice and hearing, to authorize a debtor to obtain credit or the incurring of debt secured by a lien on property of the estate, if the debtor is unable to obtain unsecured credit allowable as an administrative expense pursuant to § 503(b)(1).

18. As part of the purchase price consideration, the Buyer is providing the DIP Financing which allows the Debtors to reduce current finance costs and allow them to operate on a more normalized basis until closing. These features enhanced the purchase price. *In re Snowshoe Company*, 789 F.2d 1085, 1088 (4th Cir. 1986) (the trustee contacted other financial institutions in the immediate geographic areas and was unsuccessful in obtaining unsecured

-8-

*PHX 331322748v1*

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1 credit); *In re 495 Central Park Avenue Corp.,* 136 B.R. 626, 630-31 (Bankr. S.D.N.Y. 1992)

2 (unsuccessful attempt to secure financing from other sources justified senior priority loan under

3 Bankruptcy Code § 364); *In re Ames Dept. Stores, Inc.,* 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990)

4 (that the debtors had contacted four lenders satisfied the requirements of Bankruptcy Code § 364

5 that debtors were unable to obtain comparable financing on an unsecured basis).

6     19.    The proposed terms of the DIP Facility are reasonable. The purpose of the DIP

7 Facility is to enable the Debtor to maintain the stability of its operations during this Chapter 11

8 case and prior to closing. *See In re First South Savings Assoc.,* 820 F.2d 700, 710-15 (5th Cir.

9 1987); *In re Tenney Village Co.,* 104 B.R. 562, 568-69 (Bankr. D.N.H. 1989).

10     20.    As part of the sale process the Court recognized and in general, a bankruptcy court

11 should defer to a debtor's business judgment regarding the need for and the proposed use of

12 funds, unless such decision is arbitrary and capricious. *In re Curlew Valley Assoc.,* 14 B.R. 507,

13 511-13 (Bankr. D. Utah 1991) (courts generally will not second guess a debtor's business

14 decision when those decisions involve a business judgment made in good faith, upon a reasonable

15 basis, and within the scope of authority granted under the Bankruptcy Code); *Curlew Valley*, 114

16 B.R. at 513-14.

17     21.    The terms of the DIP Facility are fair and reasonable and are in the best interest of

18 their estates. Accordingly, under the Bankruptcy Code, § 364(c), the Debtor should be granted

19 authority to enter into the DIP Facility and to borrow funds from the Buyer on the basis described

20 above.

21                      **IV.**    <u>**NOTICE**</u>

22     The terms of the DIP Facility were part of the Stalking Horse bid and served on all

23 creditors on or before October 9, 2014 and part of the APA approved on November 13, 2014.

24 Moreover, notice of the Motion and this Memorandum of Points and Authorities will be served

25 on: (a) the Office of the United States Trustee, (b) the Debtors' prepetition secured lender, (c) the

26

-9-

*PHX 331322748v1*

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

Debtors' top twenty (20) unsecured creditors on a non-consolidated basis, and (d) any parties entitled to notice pursuant to Bankruptcy Rule 2002. The Debtors submits that such notice is sufficient and that no other or further notice be given.

### V. CONCLUSION

**WHEREFORE** the Debtors respectfully request that this Court enter an order subject to the lodging of a form order that is approved by the Debtors' Prepetition Lender and Buyer (a) authorizing the Debtors to incur post-petition financing; (b) apply funds to make final payment to its prepetition lender; and (c) granting such other additional relief as is just and proper under the circumstances.

Dated: November 21, 2014

GREENBERG TRAURIG, LLP

*/s/ David D. Cleary*
David D. Cleary, AZ SBN 011826
2375 East Camelback Road
Suite 700
Phoenix, AZ 85016
Telephone: 602-445-8000
Facsimile: 602-445-8100
Email: clearyd@gtlaw.com

*Attorney for the Debtors and Debtors-in-Possession*

-10-

PHX 331322748v1